**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Imation Corporation,

Plaintiff,

v.

Quantum Corporation, Hitachi Maxell, Ltd., and Maxell Corporation of America,

Defendants.

Civil No. 01-1798 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Daniel R. Shulman, Gray Plant Mooty Mooty & Bennett, Minneapolis, Minnesota; and John Gordon Shulman, Shulman Law Office, Minneapolis, Minnesota, for Plaintiff.

Thomas S. Fraser, Todd A. Wind, and Gregory E. Karpenko, Fredrikson & Byron, Minneapolis, Minnesota; James J. Capra, Jr. and Siobhan A. Handley, Orrick Herrrington & Sutcliffe, New York, New York; John DeQ. Briggs, William A. Henry, and James G. Kress, Howrey Simon Arnold & White, Washington, DC; G. Hopkins Guy, III and Robert E. Freitas, Orrick Herrington & Sutcliffe, Menlo Park, California; and David T. Alexander, Orrick Herrington & Sutcliffe, San Francisco, California, for Defendant Quantum Corporation.

Thomas H. Boyd, Winthrop & Weinstine, St. Paul, Minnesota; and Carl W. Schwarz, McDermott Will & Emery, Washington, DC, for Defendant Hitachi Maxell, Ltd. and Defendant Maxell Corporation of America.

---

## Introduction

Plaintiff Imation Corporation and Defendant Quantum Corporation entered into a licensing agreement, which contained a forum selection clause specifying that "all



FILED MAR - 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

disputes arising hereunder shall be adjudicated in the state and federal courts having jurisdiction over disputes arising in Santa Clara County, California." Approximately one year later, Imation commenced this action against Quantum alleging violations of §§ 1 and 2 of the Sherman Antitrust Act. Before the Court is Quantum's motion to transfer the case to the Northern District of California, pursuant to 28 U.S.C. § 1404(a) and in accordance with the express terms of the license agreement. For the reasons set forth below, the motion will be denied.

## Background

### I. The Parties and Factual Background

Imation, a Minnesota-based company, specializes in data storage and information management. (2d Amended Complaint ¶ 3.) Imation has other operations, employees, and records located in Arizona, North Dakota, Alabama, Europe, and Japan. (Affidavit of Daniel R. Shulman ("Shulman Aff.") ¶ 28.) Quantum, a California-based company, is a manufacturer and designer of mass data storage products, including DLTtape™ drives and automation systems. (Declaration of Charles Constanti ("Constanti Decl.") ¶¶ 3-4.) Hitachi Maxell Ltd., a company based in Japan, and Maxell Corporation of America, a New Jersey-based company, (collectively "the Maxell companies") manufacture and sell tapes that are compatible with DLTtape™ drives ("DLT tapes").[1] (2d Amended

[1]There are different versions of tapes at issue in this dispute. However, for the purposes of this Order, the tapes will generally be referred to as DLT tapes.

Complaint ¶ 5.)

DLTtape™ drives and DLT tapes are used to preserve and store data and to back-up computer systems. (Constanti Decl. ¶ 4.) Because Quantum manufactures the DLTtape™ drives, it possesses significant knowledge and expertise relating to DLT tapes. (Id. ¶ 5.) Quantum does not, however, manufacture DLT tapes for use with its DLTtape™ drives. Instead, Quantum enters into licensing agreements with other companies in which it shares its intellectual property relating to DLTtape™ drives in exchange for royalty payments from the sale of Quantum-approved DLT tapes. (Id. ¶ 6.) Quantum has licensing agreements with Imation, the Maxell companies, Fuji Photo Film Co., Ltd. ("Fuji"), and Sony. (Id.)

During 1996 and 1997, Imation determined that it needed to be able to supply DLT tapes to its customers in order to meet their needs. Imation determined that it could (1) manufacture its own DLT tapes; (2) buy DLT tapes from Fuji and the Maxell companies and load them on Imation-manufactured cassettes; or (3) manufacture authorized DLT tapes under a license from Quantum. (Shulman Aff. Exs. 10, 13-15.) Imation decided to pursue all three options. Beginning in 1998, Imation began developing its own DLT tapes and also began buying DLT tapes from Fuji and the Maxell companies to load on Imation-manufactured cassettes.

On September 10, 1999, Imation and Quantum signed a license agreement, in which Imation agreed to manufacture and sell DLT tapes in accordance with Quantum's

specifications and to pay Quantum a royalty in exchange for the use of Quantum's intellectual property. (Declaration of James G. Kress ("Kress Decl.") Ex. A.) The license agreement contains a forum selection clause that states:

> **Governing Law; Venue.** This Agreement is made in accordance with and shall be governed and construed in accordance with the laws of the State of California, without regard to conflicts of law rules. **All disputes arising hereunder shall be adjudicated in the state and federal courts having jurisdiction over disputes arising in Santa Clara County, California,** and Licensee hereby consents to the jurisdiction of such courts.

(Id. at ¶ 13.4 (emphasis added).)

After the license agreement was signed and while working to develop a DLT tape to meet Quantum's specifications, Imation continued to purchase DLT tapes from Fuji and the Maxell companies. Quantum has yet to approve any DLT tapes developed by Imation. The relationship between Imation and Quantum has now deteriorated. At the heart of the dispute, Imation claims that Quantum has forced Fuji and the Maxell companies to charge inflated prices for the DLT tapes that it sold to Imation and that Quantum has wrongfully refused to approve any DLT tapes developed by Imation.

## II. Procedural History

On October 1, 2001, Imation filed suit in this Court against Quantum alleging violations of §§ 1 and 2 of the Sherman Act. Imation alleges that Quantum engaged in unlawful and anticompetitive acts by, among other things, illegally fixing prices of DLT tapes both before and after Imation entered into the license agreement with Quantum. (2d

Amended Complaint ¶ 23.) Count I alleges three theories of liability under 15 U.S.C. § 2. Imation asserts that Quantum with some of its licensees, including the Maxell companies, monopolized, attempted to monopolize, and conspired to monopolize the relevant market for DLT tapes in violation of 15 U.S.C. § 2. (Id. ¶ 26.) Count II alleges that Quantum and the Maxell companies conspired to fix, stabilize, raise, and peg prices for DLT tapes in violation of 15 U.S.C. § 1. (Id. ¶ 27.) Imation alleges that this anti-competitive behavior began four years prior to the commencement of this action. (Id. ¶ 22.) In addition, Imation alleges that Quantum manipulated the qualification specifications in the license agreement to prevent Imation from manufacturing Quantum-approved DLT tapes. (Id. ¶ 23) Imation also alleges that Quantum required Fuji and the Maxell companies to sell DLT tapes to Imation at inflated prices unless Imation agreed to abandon its efforts under the license agreement. (Id.)

On October 3, 2001, Quantum commenced an action in California state court against Imation alleging misappropriation of trade secrets. The California state action is non-removable because there is no diversity of citizenship and because it contains only state law claims. The litigation continues between the parties in California state court (Case No. CV801944), and a preliminary injunction has been entered against Imation. (Kress Decl. ¶ 3, Ex. B.)

On December 3, 2001, Quantum moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California. After Quantum brought its

transfer motion, but before the motion was briefed, Imation amended its complaint to add the Maxell companies as additional defendants. After the motion was briefed, Quantum asserted counterclaims against Imation alleging Lanham Act violations of false advertising, false association, and trademark dilution, and Imation filed a Second Amended Complaint to add a factual allegation concerning an additional agreement between Imation and Quantum.

**Analysis**

Title 28 of the United States Code § 1404(a) governs the ability of a federal district court to transfer a case to another district. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2001). Section 1404(a) describes three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). Courts have recognized that evaluation of a transfer motion requires a case-by-case evaluation of all relevant factors and is not limited to the three enumerated factors. Id. The party seeking to transfer a case bears a heavy burden of establishing that the balance of the § 1404(a) factors strongly favors a transfer. See Graff v. Qwest Commics. Corp., 33 F. Supp.2d 1117, 1121 (D. Minn. 1999) (Doty, J.) (citing Gulf Oil Corp. v. Gilbert,

330 U.S. 501, 508, 67 S. Ct. 839 (1947)).

## I. Forum Selection Clause

The license agreement between Imation and Quantum contains a forum selection clause, which states that "[a]ll disputes arising hereunder shall be adjudicated in the federal courts having jurisdiction over disputes arising in Santa Clara County, California." (Kress Decl. Ex. A at ¶ 13.4.) Quantum asserts that Imation's antitrust claims are subject to the forum selection clause and accordingly, this case should be transferred to the Northern District of California. Conversely, Imation asserts that the forum selection clause does not apply to its claims against Quantum because the claims do not arise under the agreement and because the claims are broader than the forum selection clause.

The presence of a forum selection clause is "a significant factor that figures centrally in the district court's calculus" when evaluating a transfer motion. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). A forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)." Id. at 31. However, "[b]efore a district court can even consider a forum selection clause in its transfer analysis, it must first decide whether the clause applies to the type of claims asserted in the lawsuit." Terra, 119 F.3d at 692.

The Second Amended Complaint contains two counts alleging violations of the Sherman Act by Quantum and the Maxell companies. The first claim alleges three

theories of liability– monopolization, attempted monopolization, and conspiracy to monopolize–under 15 U.S.C. § 2. (2d Amended Complaint ¶ 26.) To establish monopolization, Imation must establish that (1) the defendant "possessed monopoly power in the relevant market" and that (2) the defendant "willfully acquired or maintained this monopoly power by anticompetitve conduct as opposed to gaining that power as a result 'of a superior product, business acumen, or historical accident.'" Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1060 (8th Cir. 2000) (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)). In order to establish a claim for unlawful attempt to monopolize, Imation must prove (1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; (3) a dangerous probability of success; and (4) an injury reflecting the anticompetitive effect. General Indus. Corp. v. Hartz Mountain Corp., 810 F.2d 795, 801 (8th Cir. 1987). In order to establish a claim for conspiracy to monopolize, Imation must show (1) concerted action, a specific intent to achieve an unlawful monopoly and (2) commission of an overt act in furtherance of the conspiracy. Advanced Health-Care Servs. v. Radford Cmty. Hosp., 910 F.2d 139, 150 (4th Cir. 1990).

The second claim alleges that Quantum and the Maxell companies conspired to fix, stabilize, raise, and peg prices for DLT tapes in violation of 15 U.S.C. § 1. (2d Amended Complaint ¶ 27.) To establish a § 1 violation, Imation must show "an

agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade." Concord, 207 F.3d at 1058. "Practices that have been held to be illegal per se include price fixing, division of markets, group boycotts, and tying arrangements." Id.

The issue before the Court, then, is whether Imation's antitrust allegations are "disputes arising hereunder," as referenced in the forum selection clause. The Court first notes that the clause is not worded as broadly as some forum selection clauses. See e.g., Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc., 806 F.2d 848, 852 (8th Cir. 1986), abrogated on other grounds by Lauro Lines v. Chasser, et. al., 490 U.S. 495 (1989) (clause applied to "any judicial action . . . arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby or otherwise arising in connection with the relationship between the parties"); Stewart, 487 U.S. at 24 n.1 (clause applied to "any case or controversy arising under or in connection with this Agreement").[2]

The Eighth Circuit has offered some guidance in determining the scope of a forum selection clause. In Terra, the Eighth Circuit noted that determining the scope of a forum

---

[2]Furthermore, although the parties did not address it in their papers, the Court also notes that it is unclear as to why this Court may not be a proper venue based on the language of the forum selection clause that states that "all disputes arising hereunder shall be adjudicated in the state and federal courts having jurisdiction over disputes arising in Santa Clara County, California." Depending on the circumstances, this Court could have jurisdiction over disputes arising in Santa Clara County, California.

selection clause is a case-specific exercise but that several courts have "articulated variously phrased general rules regarding the circumstances in which a forum selection clause will apply." Terra, 119 F.3d at 694 (using these general rules to determine if a forum selection clause applied to certain tort claims). The Eighth Circuit did not adopt a single test in Terra but indicated that the tests would apply depending on the factual situation. Id. at 694-95.

The first test, employed by the Third Circuit, looks to whether the asserted claim "'ultimately depends on the existence of a contractual relationship' between the parties." Id. (quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.1983)). The second test, employed by the Ninth Circuit, looks to "whether resolution of the claims relates to interpretation of the contract." Id. (quoting Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988)). The third test, employed by the First Circuit and used in Terra, looks to whether the claim involves "the same operative facts as a parallel claim for breach of contract." Id. (quoting Lambert v. Kysar, 938 F.2d 1110, 1121-22 (1st Cir. 1993)).

Undoubtedly, part of the allegations that make up the Second Amended Complaint involve the license agreement and focus on Imation's allegations that Quantum has in bad faith refused to qualify Imation's DLT tapes as required by the license agreement. However, the allegations relating to the license agreement are only part of the allegations that make up Imation's claims for Sherman Act violations. Proof of those acts alone is

insufficient to establish violations of the Sherman Act. Imation cites other acts apart from activities surrounding the license agreement needed to support its allegations. For example, Imation claims that the defendants have monopolized, attempted to monopolize, and conspired to monopolize to fix DLT tape prices for years before the license agreement was executed, that Quantum has made misrepresentations to actual purchasers of DLTtape™ drives, and that in bad faith Quantum threatened to void the DLTtape™ drive warranties of customers who did not use Quantum-approved DLT tapes.

Imation argues that its allegations do not arise under the license agreement and are broader than the license agreement, by relying heavily on the Eighth Circuit's decision in Farmland. In that case, the plaintiff and the commodities broker entered into an agreement that contained a forum selection clause. Farmland, 806 F.2d at 851. The plaintiff sued the commodities broker, individuals associated with the commodities broker, and other individuals not associated with the commodities broker in a venue not covered by the forum selection clause. Id. at 851. The plaintiff made allegations of fraud, breach of fiduciary duty, violations of the securities acts, and RICO. Id. at 849. The Eight Circuit affirmed the district court's order refusing to enforce the forum selection clause in the agreement between the plaintiff and the commodities broker because the district court concluded that the suit was "much broader than that contemplated by Farmland when it signed the agreement." Id. at 851-52. Quantum argues that Farmland is distinguishable because it involved fraud and a fiduciary

relationship. The Court disagrees with Quantum because it believes that the discussion of fraud and the fiduciary relationship in Farmland was not the sole basis for the Eighth Circuit's conclusion regarding the scope of the forum selection clause. Id. The Eighth Circuit also considered that Farmland could not have anticipated litigating its claims with the other defendants pursuant to the forum selection clause in the agreement between it and the commodities broker, that Farmland had not intended to evade the forum selection clause, and that Farmland's causes of action were not covered by the forum selection clause. Id. at 852.

The Court notes that the Second Amended Complaint lists the Maxell companies as defendants. The Maxell companies are not parties to the license agreement, and Imation has not consented to a forum selection clause with the Maxell companies. Imation could not have anticipated having to litigate its claims against the Maxell companies in the Northern District of California. See Farmland, 806 F.2d at 852. The Court acknowledges that the Maxell companies were added after Quantum made its motion to transfer this case to California. However, the Court notes that the Maxell companies were properly added as defendants. Their inclusion in this litigation is but one of the deciding factors for the Court's conclusion that the forum selection clause does not apply to Imation's claims.

Therefore, while some of Imation's allegations may relate to the license agreement, the Court ultimately concludes that, under any of the three tests described in Terra, the

antitrust claims do not fall within the scope of the forum selection clause. The antitrust allegations do not ultimately depend on the existence of the license agreement, the resolution of the antitrust violations do not relate to the interpretation of the license agreement, and the antitrust allegations do not involve the same operative facts as a parallel claim for breach of contract. To prove its antitrust allegations, Imation will look to the conduct of Quantum and the Maxell companies that occurred prior to the signing of the license agreement and to the conduct of Quantum in relation to other parties, namely Fuji and the Maxell companies, who are not parties to the license agreement. Therefore, although it is true that some of the facts alleged in the Second Amended Complaint could state a claim for breach of the license agreement, Imation's claims involve much more than a simple breach of contract action and are broader than the claims contemplated by the license agreement. Imation's allegations are not simply Imation's manipulation of a breach of contract claim into an antitrust claim. See e.g., Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselischaft, 699 F. Supp. 669, 671 (N.D. Ill. 1988). Accordingly, Imation is not trying to evade the forum selection clause by alleging Sherman Act violations.

The Court recognizes the Eighth Circuit and this district's favorable view of forum selection clauses, but in the final analysis, each transfer motion hinges on balancing the competing interests and facts of every individual case. Steward v. Up North Plastics, Inc., 177 F. Supp.2d 953, 960 (D. Minn. 2001) (Tunheim, J.). In this instance, the Court

concludes that the forum selection clause is not applicable to Imation's claims because the claims are broader than the forum selection clause.

## II. Other § 1404(a) Factors

Having determined that the forum selection clause does not apply to the claims alleged by Imation, the Court turns to the other factors identified in § 1404(a).

### A. Convenience of the Parties

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra, 119 F.3d at 695. This is especially true in antitrust suits because the plaintiff's choice of forum is entitled to particular respect. See Expoconsul Inter., Inc. v. A/E Systems, Inc., 711 F. Supp. 730, 735 (S.D.N.Y. 1989).

As a result of the California state court litigation, Quantum claims that the documents relevant to this case are located in California. Quantum also argues that much of Imation's work relevant to this case took place at Imation's other locations in Alabama, Arizona, and California. Therefore, Quantum concludes that it would be more convenient for the parties to transfer the case to California. Imation acknowledges that keeping the case in Minnesota favors Imation while transferring the case to California shifts the convenience from Imation to Quantum. Imation argues, however, that a mere shift in convenience between the parties does not justify a transfer of venue.

The Court agrees with Imation. "[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." Graff, 33 F. Supp.2d at 1121. Obviously, Minnesota is more convenient for Imation because its principal place of business is in Minnesota, even if some of its activities relevant to this case took place outside of Minnesota. Likewise, California is more convenient for Quantum because its principal place of business is in California. Moreover, although some documents gathered for the California state action may be used in this case, this fact does not make California a more convenient forum for this action. Instead, it simply shifts the inconvenience from Quantum to Imation. Therefore, the convenience of the parties weighs in favor of leaving this matter venued in Minnesota.

**B. Convenience of the Witnesses**

The convenience of the witnesses factor relates to the "relative ease of access to sources of proof." Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. at 508). For example, relevant considerations concerning this factor include the number of non-party witnesses, their locations, and the preference of courts for live testimony over depositions. Id.

Quantum states that non-party witnesses (former Quantum employees) with knowledge relating to this issue are located in California and that California is "a superior forum in terms of ready access to documentary evidence" as a result of the state court

litigation. (Quantum's Reply Mem. in Supp. of Mot. to Transfer, p. 13.) Imation states that a number of non-party witnesses (former Imation employees) reside in Minnesota and that those non-party witnesses "cannot be compelled by subpoena if this case is tried in California." (Imation's Mem. in Opp. of Mot. to Transfer, p. 27.) Thus, both parties face the prospect of witnesses who would be beyond the court's subpoena power.

Transferring venue in this situation would simply shift the burden from one party to the other. Therefore, the Court concludes that the convenience of the witnesses weighs in favor of leaving this matter in Minnesota.

**C. Interests of Justice**

A number of considerations are generally relevant in evaluating this factor of the §1404(a) analysis, including the relative familiarity of the two courts–the original forum and the proposed transferee forum–with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgment. Graff, 33 F. Supp.2d at 1122.

Quantum argues that the interests of justice favor transferring this case to California. Since this motion has been briefed, Quantum has asserted counterclaims against Imation alleging violations under the Lanham Act for false advertising, false association, and trademark dilution. In both of its briefs, Quantum discussed the potential impact any counterclaims would have on the interests of justice factor. Quantum believes

that its claims against Imation arise out of the license agreement and relate to the same operative facts as those that make up Imation's claims in this case. Quantum argues that it has been forced to violate the forum selection clause by asserting those counterclaims in this case in Minnesota. In addition, Quantum argues that California law will play "a significant role in this case" even though it concedes that federal law governs Imation's antitrust claims. (Quantum's Mem. in Supp. of Mot. to Transfer, p. 13.) Finally, at oral argument counsel for Quantum noted that the interest of judicial economy favors transferring a case to the district in which a related case is pending. See Fairfax Dental (Ireland) Ltd. v. S.J. Filhol, Ltd., 645 F. Supp. 89, 92 (S.D.N.Y. 1986). For these reasons, Quantum argues that the interests of justice favor transferring the case to California.

Imation disputes the impact that the California state court action has on the interests of justice factor. Because its antitrust claims are governed by federal law, Imation disputes Quantum's assertion that California law will play a significant role in this case. Imation states that judicial economy is not served by transferring the case to California because there will still be two cases pending between the parties regardless of whether this case stays in Minnesota or is transferred to California. Thus, Imation argues that the interests of justice favor keeping this action in Minnesota.

Quantum has not described how California law will impact Imation's federal antitrust claims under the Sherman Act or its own claims under the Lanham Act. The Court will not speculate as to the impact California law may have on those claims.

Moreover, the Court is not persuaded that the interests of justice are necessarily served by transferring a case to another federal district simply because a state court case is pending in the same district. Quantum has not presented any other argument that weighs in favor of transferring the case to California. For these reasons, the Court concludes that the interests of justice do not favor transferring the case to the Northern District of California.

## Conclusion

Upon all the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that Defendant's Motion to Transfer Venue (Doc. No. 38) is **DENIED**.

Dated: March 8, 2002

Richard H. Kyle
United States District Judge